Case number 08-3113, Jonathan C. Dopkeen v. Derek B. Whitaker. Your counsel, you're free to approach the podium. Tell us who you are, who you represent, and how much time you need. Good morning, Your Honor. My name is Ronald Schwartz. I represent the appellant, Jonathan Dopkeen. I believe I'll need about 10 minutes, 15 minutes tops. Counsel? Richard Hussack, Assistant Attorney General, representing the defendant, Dr. Whitaker. And I would ask for no more than 15 minutes. Okay, thank you. We have read the briefs, we've looked at the cases, so we encourage you to stick to what you think are your strong points. And if we have any questions, we won't hesitate to ask you. Okay, thanks, Counsel. Proceed. May it please the Court. This case is all about the fact that Eric Whitaker usurped the authority of the Governor and the Senate. Whitaker acted unlawfully in discharging Dopkeen by barring him from his office and instructing the Comptroller not to pay him his salary or his benefits. This was an ultra-virus act, Your Honor. The proper procedure would have been for the Governor to appoint and the Illinois Senate to confirm. This did not happen. In this Court, Whitaker argues two elements of tortious interference. I'm sorry, you say the proper procedure would have been? The proper procedure, Your Honor, if Whitaker no longer wanted to work with Dopkeen, would have been for the Governor to appoint. And I looked at the statute, and I didn't quite see how that would happen. Well, the statute says. You quoted several sections, but you didn't mention, like you said, under 5-15, it's a department, under 5-20, there's a department head, the director, but you skipped over 5-100. Your Honor. Why is that not important? Your Honor, I'm not familiar with 5-100. It says to the effect that the executive and the executive officers, et cetera, in addition to the directors of the department, the executive administrative officers are also appointed, and then 5-5-105 says that there is an assistant director of certain departments which act under the direction, supervision, and control of the director. Yes, Your Honor. And then it goes on to explain, as you say, one of them is the assistant director. Yes. But that comes underneath the director. Yes, Your Honor. This is the executive article that implements the Constitution, and it is true that when Dopkeen worked for Whitaker, it was up to Whitaker to direct Dopkeen in his job. That is true. But the executive article provides that Dr. Dopkeen was to be appointed by the governor. But not confirmed, no consent. Yes, Your Honor. That is what the executive article states. Well, we're going to have to explain that, or I'll have to reread it. Okay. I'll try it one more time. Dopkeen worked under Whitaker. We do not argue that. We argue that under the executive article, it was for the governor to appoint another assistant director and for the Illinois Senate to confirm that assistant director. That is the nature of the statute, Your Honor. It may be a little bit confusing, but that's the way the Illinois General Assembly set up the statutory laws. Do you make any allegations in a complaint as to why this happened? What was the motivation of Dr. Whitaker? No, Your Honor. We do not. We allege tortious interference with contractual relations and that Whitaker knew the statutory laws when he did this. But we do not ascribe any ill motives. We do not do that. Did the state, the AG, file a request that this be dismissed and that you have to refile in a court of claims? No, Your Honor. There was never a motion for that in the trial court. Really? No, Your Honor. I'll direct most of my questions to them then because I don't see how, where there's no allegation of personal animosity, that this doesn't belong in a court of claims. Whitaker didn't do this out of personal animosity, so there's no allegation in the complaint. And it's not, you know, well, go ahead. Your Honor, we do argue that Whitaker's actions were unjustified and he did them intentionally. And therefore, he violated the law and he tortiously interfered with Dr. Dobkin's relationship, his employment relationship with the state. We do argue that, but in the complaint itself, we do not ascribe any ill motives to him. I just bring it because we have to look at our jurisdiction as the first thing we have to look at. And it's, there's lots of cases out there saying, clearly Dr. Whitaker fired Dr. Dobkin as a result of Whitaker being an employee of the state of Illinois. There's no allegation he did because he didn't like him on a personal level. He did that because, for whatever reason, but he could only have fired Dobkin as a result of Whitaker being the supervisor, which is what Justice Murphy just pointed out. So had Whitaker not been employed by the state of Illinois as being the director, he certainly would not have been in a position to terminate the employment or attempt to terminate the employment of the assistant director. And so therefore, the question would be, so therefore doesn't the basis of the claim arise out of what Whitaker did for his employment, Whitaker's employment now, with the state of Illinois? Your Honor, the heart of our case is that Whitaker acted ultra-virus. He had no authority to fire Dobkin. He had no authority to instruct the controller to stop paying Dobkin. So because that was unauthorized, he stepped outside of his role as director, and Dobkin has the right to sue him directly, and it's not a matter for the court of claims. All right, I understand. I suggest it's not enough just to make an allegation that was ultra-virus. Obviously, every suit, whether it be based on contract or tort, would allege a bad act on the part of the defendant. So if that were enough to say that he acted beyond the scope of his authority, that would take it out of the court of claims. I'd suggest they could close the court of claims because you would rarely find a case where they said he did exactly what he was supposed to do, and I'm suing him for that. Your Honor, the state's fisc has never been at issue in this case, and for that reason the court of claims is not the appropriate body to hear this case. All right, let's take that. So let's assume then that you get a judgment, that somebody prevails, that somebody figures out that, well, this wasn't right. Poor Dr. Dabke and Dr. Whitaker did this. He acted ultra-virously. Let's give him a million dollars. Is Whitaker supposed to pay that, or is he supposed to turn around to the state of Illinois and say, hey, boss, I owe a million dollars. State, cut him a check. No, Your Honor. This would be against Whitaker personally. Whitaker would have to pay the judgment if it went to trial and Whitaker lost. Well, just so I understand it also, under 610 of the statute, it says he appointed the third Monday, and apparently this was done in 05. I looked at an old calendar. 05, they were appointed, and then he served two years, and then after the third Monday he was then terminated. And the only thing you're saying, alleging is wrong, is that he shouldn't have been terminated. The governor should have appointed someone else, and therefore by the reappointment or appointment of a temporary person, the term then would have run. Yes, Your Honor. We're alleging and looking at the statute that until the governor appointed a new assistant director, Dabke's tenure would continue and he would essentially be holding over until a new assistant director would be appointed. That is what the statute clearly states. If you apply it to assistant directors as well as directors. Yes, Your Honor. That is the law. In this court, the appellee alleges that Dabke did not satisfy two of the elements, tortious interference, that he had an employment relationship, and that Whitaker was unjustified in removing Dabke. The employment relationship is clear, Your Honors. It was set up by the statutory scheme itself. And we rely on Duda-Leo for support here. In that case, the contractual relationship was set up by the handbook. And in this case, the statutory relationship is what Dabke's right to contract is based on. And if the Supreme Court found that a handbook would set up an employment relationship, then certainly a statute should be able to do that. Whitaker also argues that he had a qualified privilege to remove Dabke. And again, he acted ultra-virus, so no qualified privilege would attach here. Finally, Whitaker argues that Dabke would have had to have gone and first established his right to the position. However, Whitaker acted ultra-virus in removing Dabke. And this was a direct act. And in this matter, we did not have to, in a collateral case, attack Whitaker's right to do that. So for these reasons, Your Honor, we believe that the judgment of the trial court should be reversed, and we wish that it be remanded. Thank you. Thank you, counsel. Thank you. And I think that's a very good point, and I think that's a very good argument. If you have any other questions, as I did, you might address those during your argument. I always figure that oral argument is for the benefit of the court more than anything else. And so I take your questions first because you've obviously given some thought to this case and read the briefs, and those are the things I'd like to focus on. The only thing I'd ask, I'm somewhat impaired with my hearing, so if you keep your voice up, I'd appreciate it. My family accuses me of being hard of hearing, and I suggest that they mumble, but I haven't gone in for the hearing test yet. Let me make sure that I speak loudly and clearly. I'd like to clarify with respect to the provisions of the civil administrative code that Presiding Justice Murphy directed his attention to. The statute does provide that the position or the duration of the term shall be until a, for a two-year period starting the third Monday in January, a odd number of years, until a successor is appointed and qualified. I may have used the word confirmed in my brief, and I'd like to correct that. I don't know. It may be true. It may not be true. The confirmation by the Senate is necessary, but the statute uses the term qualified, and the succeeding provision of the code refers to qualification as taking an oath, I think, and posting a bond. So I don't want to leave any misimpression there. There was no allegation that there was an ill motive at all in connection with the termination. There's no doubt that Dr. Whitaker, who takes as true the allegations of the complaint for purposes of the motion to dismiss, but isn't going to admit that in the real world they're all true, that he did so in his capacity as director, and we will accept for the sake of this motion to dismiss and this appeal, that he did not have the technical legal authority to terminate Dr. Dopkin before a successor was appointed. But the question in this case is not whether Dr. Dopkin had a statutory right to be reinstated to the position or to hold the position during this stub period. Maybe that was for the benefit of the public so that the office wouldn't remain vacant, not for the benefit of the office holder that could be enforced in a private right of action against the state for mandamus. Those are interesting questions, but they're not the questions before the court here. The question before the court here is whether the claim stated in the complaint, which is based solely on one theory, which is tortious interference with contract, whether that was properly dismissed, assuming the truth of the well-pled factual allegations, but not the factual conclusions or legal conclusions in the complaint. And I suggest that for the principal reason that the law is clear that those statutes don't create a contract. The complaint and the motion for leave to file it couldn't be clearer that it was proceeding strictly on the basis that these two statutes, which create the position of assistant director and that specified the duration of office for that position, and that's paragraph 20 of the amended complaint, it's at page 6 of the appendix of the plaintiff's opening brief, that they allegedly create the existence of a valid and enforceable contract between Dr. Dotkein and the state of Illinois. That's the linchpin of this tortious interference with contract claim. And if it's wrong, which we assert it is, and there is no contract created by that statute, regardless of whether there's a statutory right that could be enforced, then there can't be tortious interference with contract. And that's what this Court held in the Levitt v. Gores case, is that statutes and ordinances that specify the salary or compensation and duration in terms of a public office do not create a contract. And the plaintiff has sort of tried to blur the distinction by referring to an employment relationship. That's not the issue. The issue is whether these statutes, by themselves alone, because that's all that's alleged before the Court, created a private contract. And the law has been clear for many, many, many years, that when you have a public office that's created by statute, and the terms of which are created by statute, that isn't a contract. And there's a sound policy behind that, which is that to the extent that the legislature creates the position, it can change the legislative terms of that position. And the Supreme Court has repeatedly held that those legislative changes can't be attacked on the constitutional theory that they impair the obligation of contract because they don't create a contract. The legislature retains the authority when it sets up the terms and provisions of public offices to amend those unless the statute specifically, by its language, reflects an intention to create private contractual rights. And that simply is not present here. Did you handle this matter in the trial court? I'm sorry? Did you handle this matter in the trial court? I did not. I'm in the Civil Appeals Division, and I've discussed it with a person who did handle it, and I've read all the briefs. Can you answer my questions regarding why isn't this an accorded claim? I can't say from personal knowledge that there isn't a court of claims suit pending. But our position is that to the extent that there is any valid claim for compensation by the plaintiff that could be brought, and that claim is one that is viable against the state, that that is where it belongs. The sovereign immunity argument was made, but on appeal we've stuck to sort of the simpler, I think, narrower and easier ground, which is that to the extent that there's an allegation that the alleged action by Dr. Whitaker in implementing the termination at the end of this two-year period was ultra viris and didn't involve a discretionary function, that the issue here isn't really one of sovereign immunity. I do want to emphasize, however, though, that to the extent that the plaintiff is right and had the statutory authority to be in this position during this stub period until a successor was appointed and qualified, that the proper remedy was to bring a mandamus action within the narrow time limits that are allowed for those actions. In fact, they did bring a mandamus action. An affirmative defense of laches was filed because it's well recognized that somebody seeking public office under a claim that they were improperly denied the right to occupy the position has to bring that action quickly so the government isn't at the position of having to pay for services that aren't provided. And essentially, in the face of that affirmative defense, the plaintiff voluntarily dismissed any claim to be restored to this position. So the plaintiff is now standing in the position of saying, I don't want this job back. And he's not claiming that he wasn't paid for the work that he did while he was in the position. He wants to be paid for work that he didn't do for the position after he was terminated from it. And he's not seeking for that payment from the state. He's seeking for that payment from the director who, in connection with his functions as director, terminated him, albeit, you know, allegedly in a technically, legally ultra-various fashion. Well, you mentioned that part of the problem at page 13 of your brief where you say, well, really, Whitaker was just doing his job and, therefore, why would he be personally liable? And maybe it's because I'm a state employee and I've been a government employee for most of my adult life. I haven't been sued by a series of murderers. I don't know how Dr. Whitaker feels about the state not coming in and saying, you're on the hook. If we lose this thing, if you lose on your theory today, he'll end up paying and it goes to trial. He'll lose his money. We are not taking that position. Under the State Employee and Officer Indemnification Act, the state, pursuant to a determination early made by the attorney general, and I don't think that's part of the issues the court needs to decide, but it's relevant background, the state either can refuse to defend on the ground that the conduct is willful and intentionally in violation of the law, or, if not, the state, absent a conflict of interest, steps in and defends. And if it defends and loses, the state is also the statutory insurance carrier, if you will. I usually don't bring up insurance availability in cases like this because the focus is on the liability between the parties. But the reality is that the state, I'm an assistant attorney general. I'm representing him pursuant to that statute. I'm not representing the state here. The state is not my client. The state is Dr. Whitaker. And if a judgment were obtained against him, the reality is he would, pursuant to that Indemnification Act, hand the judgment over to the state and say, please pay it. And the state has essentially foregone its opportunity to say, no, this was willful and intentional, and therefore we have no duty under the Indemnification Act to reimburse you if there is such a judgment. But the existence of such statutory protection doesn't trigger sovereign immunity. And I think the law is clear. The fact that the state provides this type of reassurance and protection for its employees and officers does not mean that this is a suit against the state. Well, I think you might want to look that up because this panel has held otherwise involving state's attorneys. So I assume we would also find a thing directly for employees of the state of Illinois, since we have found it for Cook County employees. I think they're pretty good. We find it for state employees. To the extent that there is statutory insurance coverage for defense of alleged personal wrongs, that sovereign immunity applies? No. When somebody is trying to seek a judgment against an employee of the government and trying to get for an act that arose out of the employment of that person, the government employment of it, that immunity will get to them. Oh, that would be true to the extent that the action essentially seeks to control the exercise of discretionary functions. And, you know, going into the mental thinking behind this, one of the reasons we didn't argue that in this case is because at least the complaint alleges that the director had no discretion at all to terminate Dr. Dottke in this case. So it doesn't implicate that aspect of sovereign immunity, which also protects against personal liability claims against officials. So the key point I want to come back to is that the law has been clear for many years, and the plaintiff doesn't cite a single case to the contrary, that a statutory right with respect to the duration or compensation of a public office doesn't create a private contract for good and sound policy reasons. And without a private contract, there's no tortious interference with contract. There's another distinction which lurks in the background, and I don't want to develop, but I just want to mention here, which is the distinction between a public official or officer and a public employee. The Civil Administrative Code also says that beyond all these people that are named in the code, specifically the offices that are created in the code, the various departments can also have employees subject to the personnel codes provision. We're not dealing with that here. We're dealing with a public office and a statute that creates the terms of it, and the sole question is, does that create a private employment contract? And the plaintiff's argument is, well, he's not at will, therefore, he must have an employment contract. And that is a false dichotomy. It creates a false equivalence between tenure and an employment contract, and it's wrong on every ground. You can have, in the private sector certainly, you can have an express, elaborate, written contract with all sorts of terms and conditions, and that's an employment contract that says, oh, and by the way, the employee can be terminated at will. There's nothing wrong with that. And in the public side, you can have statutes or even constitutional provisions that specify the duration of a term of office so that it's not at will and the person can only be removed upon certain grounds. But that's still not an employment contract. It's just a statute, and it's telling that the very case that the plaintiff cites in the reply brief, the Pleasure Driveway and Park District case, says that an employer normally may discharge an employee without cause or reason or for any cause or reason in the absence of contract or statutory provision. Those are two alternatives. You can have the right not to be terminated at will pursuant to an employment contract. We'll concede that. Or pursuant to a statute. That's what we have here. It's not a contract. And without a contract, there can't be a tortious interference with contract, plain and simple. I've essentially said everything else in my brief that I'd like to discuss. I could briefly touch upon the second alternative ground for affirming a judgment, which is there's a policy that requires people to get a judgment restoring them to a position before they seek recovery for unpaid salary during the time when they were not in that position. And it protects the public fisc. You can't sit on your hands and say, oh, I'll wait and wait and wait and do no work for the government, but then they have to pay me for that whole period that I'm not working. It creates certainty. It creates predictability. And it requires a promptness because a suit to be restored to that position has to be brought quickly. And it avoids the government being put at the risk of having to pay for services that aren't rendered. Now, the argument here is made, oh, no, no, we'll just establish the right to that position as part of this damages suit against Dr. Whitaker. That's not what the cases hold. They require that the judgment order the person reinstated, not that there just be some declaration of illegal rights involved. And the second argument made is, oh, that doesn't apply. This is a tort suit against an individual, not a claim against the government. And so those policy considerations don't apply. And I would say if that were enough of a distinction to displace this principle, then every time that there's a suit like this, you may have the same perverse incentive. You sit on your hands, you provide no services to the government, and then you go to the controller or the treasurer or the budget officer and say, you're personally liable because the law required you to cut me warrants or checks for my salary even though I wasn't doing any work. And I'm suing you for, you know, tortious interference with my rights. It's the same policy. It's the government offices, the right to obtain those services, and for there not to be any liability for services that aren't rendered during that period of time. So for those reasons and those set forth in my brief, unless the court has any other questions, I urge the court to affirm the judgment dismissing this action. Thank you, counsel. Thank you, Your Honors. First, since the court has concerns about sovereign immunity, we would request leave to brief that issue since neither party has done so. Since I'm the one concerned about it, if that's likely to be the basis of our ruling, we will contact and ask for additional briefing. Thank you, Judge. I need to go back. The primary issue in this case is that Dr. Whitaker acted ultra-virus, and everything follows from that. That's why we're here today. Whitaker argues that it was a technical violation. It wasn't a technical violation. He had no authority to do what he did. This is the rule of law. He can't wish it away that way. And second of all, there hasn't been any briefing about whether the State Senate is a mere formality. We believe when you read the statute, Article V, it will be clear that the Illinois Senate had to confirm, as that word is generally known, that it wasn't simply the governor appointing. But even so, the governor did not appoint someone, and Dr. Dobkin remained in the position, should have remained in the position, until the appointment was made. Now, what's your best case in response to their case, that a public statute at issue here creates an employment contract? Our cases are Pleasure Driveway and the Gus case, and they do create that exception. And we argue that in our brief. I think that covers the points I wanted to make in reply. Thank you, Your Honor. Thank you. Court will take the case under advisement.